UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| BENJAMIN BEAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:13-cv-00196-NT |
| | ) |
| PATRICIA BARNHART, et al., | ) |
| | ) |
| Defendants. | ) |

## RECOMMENDED DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Benjamin Bean has filed suit, pursuant to 42 U.S.C. § 1983 and the Maine Civil Rights Act, 5 M.R.S. § 4682, against Defendants Patricia Barnhart, who at the time of the incident at issue was Warden of the Maine State Prison, and Joseph Ponte, Commissioner of the Maine Department of Corrections. (Complaint, ECF No. 1.) Bean claims Eighth Amendment violations as a result of an assault by another prisoner who allegedly used a padlock as a weapon. Defendants have filed a motion for summary judgment based on their affirmative defense that Bean failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). (Motion, ECF No. 18.) For reasons that follow, the recommendation is that the Court deny the motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

For purposes of this motion, the facts are presented in the light most favorable to Bean as the non-moving party. The pertinent facts are undisputed except where otherwise indicated. Bean was in the custody of the Maine Department of Corrections from April 25, 2012, to July 12, 2013,

at which time he completed his sentence and was released. (Defendants' Statement of Facts ¶ 2, ECF No. 19; Plaintiff's Opposing Statement of Facts ¶ 2, ECF No. 26.) The padlock assault occurred while Bean was incarcerated at the Maine State Prison in Warren. (Complaint ¶¶ 7-9, ECF No. 1; Answer ¶¶ 7-9, ECF No. 4; Defendants' Statement ¶ 3; Opposing Statement ¶ 3.) Although the statements of facts suggest that the assault occurred on May 24, 2012, (Defendants' Statement ¶ 3 n.1; Opposing Statement ¶ 3), it appears that both Defendants and Bean assert that the assault actually took place on May 21, 2012. (*Id.*; Grievance File at 4, 6, 8, ECF No. 20-1.) Bean incurred significant facial and head injuries as a result. (Complaint, ¶ 9; Answer ¶ 9.)

The grievance procedure of the Maine Department of Corrections, which procedure is provided to each prisoner, states in relevant part:

> During the orientation process for each client, a copy of this policy and procedures shall be provided and the grievance process and how to obtain assistance with the process shall be explained. It shall be the responsibility of the Caseworker or Care and Treatment Worker assigned to a prisoner or resident who needs assistance with the grievance process to provide assistance, including, but not limited to, arranging for a sign language interpreter, foreign language interpreter, assistance to an illiterate prisoner or resident, and reasonable accommodation for a prisoner or resident with a physical or mental disability.

(ECF No. 21-1 at 3.) The grievance procedure requires that a prisoner attempt an informal resolution before filing a grievance, and further requires that a prisoner initiate a grievance within 15 days after the incident that gave rise to the grievance. (Defendants' Statement ¶ 4; Opposing Statement ¶ 4.)[1]

The policy also states: "The Grievance Review Officer shall grant an exception in a case where it was not possible for the client to file a grievance within the fifteen (15) day period." (ECF No. 21-1 at 4.) The procedure contemplates a three-level review. (Defendants' Statement ¶ 5,

---

[1] Defendants' statement of facts contains two paragraphs numbered "4". Bean's opposing statement of facts contains one paragraph numbered "4". However, this does not appear to present an issue, as Bean's opposing statement of fact admits that there is a grievance policy as described but denies that it applies to assaults on inmates.

Opposing Statement ¶ 5.) A prisoner is to initiate a grievance by filing a form with the facility's grievance review officer, who would make the initial decision. (*Id.*) In the event of an adverse decision, the prisoner could appeal to the facility's chief administrative officer, who in this case was the warden. (*Id.*) If the prisoner remains dissatisfied with the result, the prisoner could appeal to the commissioner. (*Id.*)

In this case, Bean went through all three levels of review. (Grievance File, ECF No. 20-1.) He filed a grievance form, but not until July 10, 2012, which filing Bean concedes was not within the required 15-day time period. (Defendants' Statement ¶¶ 6-8, Opposing Statement ¶¶ 6-8.) On the initial grievance form, Bean said that he told his caseworker on May 19 that he believed he was at risk of being assaulted in the prison, but the caseworker told him there was no other place for him to be housed at that time. (ECF No. 20-1 at 4, 8.) In his initial grievance form, Bean maintained that the late filing of the grievance form should not bar his grievance because the assault occurred just a few days after he arrived at the Maine State Prison, and as of the time of the assault, he had not had time to review the prisoner handbook that contained the prison grievance policy. (Defendants' Statement ¶ 8, Opposing Statement ¶ 8, ECF No. 20-1 at 8.)

The grievance review officer denied the grievance on two grounds: lack of timeliness and failure to attempt an informal resolution. (ECF No. 20-1 at 7.) The letter stated in pertinent part, "In your grievance you state that this event occurred on May 21, 2012. You filed your grievance approximately one and one half months later, which is clearly outside of the 15 days that you are allowed by policy to properly file a grievance. You also made no attempt [at] resolving this issue informally." (*Id.*) That concluded the first level of administrative review.

Bean appealed to the second level of review, and at this stage, he further explained his reasons for the time of the filing. (ECF No. 20-1 at 6.) On the form for this appeal, Bean asserted

3

that he was in the infirmary from May 21 until May 24, when he was placed in a special unit. He alleged that he remained in the special unit from May 24 until June 28, and that he did not have access to his prison handbook while he was in the special unit. (ECF No. 20-1 at 6.)

In ruling on the appeal, Defendant Barnhart concurred with the grievance review officer's determination. More specifically, Defendant Barnhart concluded that the reasons stated in Bean's appeal for his late filing were insufficient, and that Bean did not attempt informal resolution of the grievance. (ECF No. 20-1 at 5.) Defendant Barnhart's letter stated in pertinent part:

> I concur with the Level I response provided by the Grievance Review Officer. The reasons you have outlined in your appeal for not submitting your original grievance within the 15 day time limit are insufficient. I also noted that you did not attempt an informal resolution to your grievance at the time of the alleged assault, as required. For these reasons it is inappropriate to consider your appeal. Clearly, the 15 day time limit for submitting a formal grievance in this matter has expired.

(*Id.*) Defendant Barnhart did not explicitly address Bean's allegation that he did not have access to the grievance policy. (*Id.*)

Bean appealed to the third and final level of administrative review. At this stage, Bean alleged that while he was incarcerated at the Maine Correctional Center before he was transferred to the Maine State Prison, he had warned prison officials that he would be in danger at the prison due to issues with other inmates. (ECF No. 20-1 at 4.) He said that when he told his caseworker about the threat, the caseworker suggested that he apply for a pod transfer, and that the caseworker would alert the sergeant to the threat of assault. (*Id.*) He also wrote, "[A]s for not filing within 15 day[s] I did not have a handbook long enough to go over the policy before I was assaulted and then sent to SMU with no handbook." (*Id.*) In his ruling, Defendant Ponte stated simply that the grievance appeal had been reviewed, and "[t]he responses you received at the lower levels are correct," and thus Defendant Ponte denied the grievance appeal (ECF No. 20-1 at 1.) As with

Defendant Barnhart's response, Defendant Ponte did not explicitly address Bean's allegation that he was without the handbook while he was in the special unit. (*Id.*)

Defendants do not directly address Bean's alleged lack of access to the grievance policy while he was in the special unit. Defendants assert (and Bean admits) that while he was incarcerated at the Maine State Prison in 2007 and 2008 he received a prisoner handbook containing the very same grievance policy as was in effect when the May 2012 padlock assault occurred. (Defendants' Statement ¶ 9, Opposing Statement ¶ 9.) For his part, Bean maintains that prison officials had obstructed the grievance process for other prisoners, either by threatening them with bodily harm or retaliation for filing a grievance or by refusing to properly process grievances. (Additional Statement of Facts ¶¶ 3-10.) However, Bean did not allege that prison officials had directed any of these obstructionist maneuvers at him.

Bean also contends that he satisfied the objectives of the grievance procedure and the purpose of the PLRA's notice requirement by serving Defendant Barnhart with a notice of claim on June 19, 2012, pursuant to the Maine Tort Claims Act, 14 M.R.S. § 8107, and by sending, by letter from Bean's counsel to counsel for Defendants on June 29, 2012, a detailed factual memorandum about the assault. (Defendants' Statement ¶¶ 6, 8; Opposing Statement ¶¶ 6, 8; Additional Statement ¶¶ 13-14; Reply Statement of Facts ¶¶ 13-14; ECF Nos. 26-2, 26-3, 26-4.) Bean thus maintains that the prison fully considered the substance of his claims on the merits and that a grievance was not required for inmate-on-inmate assaults. (Additional Statement ¶¶ 11-13, Reply Statement ¶¶ 11-13.) Defendants deny that these communications satisfied the requirement for a formal grievance and deny that they waived that requirement. (*Id.*)

In his complaint, filed in May 2013, Bean alleges violations of 42 U.S.C. § 1983 (Count I) and the Maine Civil Rights Act, 5 M.R.S. § 4682 (Count II). In their response to Bean's complaint,

Defendants assert several affirmative defenses, including the failure to exhaust administrative remedies. (Answer at 3.)

## II.    DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court reviews the factual record in the light most favorable to the non-moving party. *Hannon v. Beard*, 645 F.3d 45, 47-48 (1st Cir. 2011). Unsupported claims are subject to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.").

### B. The PLRA, the Grievance Policy, and Exhaustion of Administrative Remedies

The PLRA requires a prisoner to exhaust administrative remedies before bringing a lawsuit: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that this provision requires "proper exhaustion" of a prisoner's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. The exhaustion requirement applies to any action brought concerning prison conditions, including inmate-on-inmate assaults. *Medina-Claudio v. Rodríguez-Mateo*, 292

F.3d 31, 33-34 (1st Cir. 2002) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (noting that the parties did not dispute that a claim concerning inmate-on-inmate assault was a claim about prison conditions).

The Supreme Court has cited several reasons for the requirement of exhaustion of administrative remedies, including "'[affording] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford*, 548 U.S. at 93 (quoting *Porter*, 534 U.S. at 525). "Requiring proper exhaustion . . . gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id.* at 94. It also "improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court." *Id.*

Defendants' pending motion for summary judgment is based on Bean's alleged failure to exhaust administrative remedies. Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear the burden of proof, at least initially. *Jones v. Bock*, 549 U.S. 199, 211-12 (2007).[2]

As explained above, Defendants argue that Bean failed to exhaust his administrative remedies because he did not file his grievance within the 15-day period required by the grievance procedure. The record reveals that when Bean was admitted to the facility, Defendants provided him with a handbook, which included a description of the grievance procedure, including the 15-day period within which a prisoner must file a grievance. The evidence is undisputed that Bean failed to file the grievance within 15 days of the alleged incident. Bean contends that his failure

---

[2] To the extent Bean maintains that he could not avail himself of the administrative remedies, Bean would have the burden of proof. *See Albino v. Baca*, 697 F.3d 1023, 1031 (9th Cir. 2012), *reh'g granted*, 709 F.3d 994 (9th Cir. 2013).

to file the grievance within the required time period is excusable under the circumstances of this case, and that is a central issue generated by Defendants' affirmative defense.[3]

While the First Circuit does not appear to have had an opportunity to rule on whether the failure to exhaust may be excused in the context of a prisoner section 1983 claim, the Second Circuit has held that "a three-part inquiry is appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a)." *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). In *Hemphill*, the Court recognized three possible excuses for failure to exhaust: (1) administrative remedies were not in fact available to the prisoner; (2) a defendant was estopped from asserting the defense because his own actions inhibited the prisoner's exhaustion of remedies; and (3) the prisoner alleged "special circumstances" that justify his failure to exhaust. *Id.*[4] The Court further stated that in the context of the prisoner's assertion that

---

[3] As mentioned above, Bean also contends that he satisfied the objectives of the grievance procedure and the purpose of the PLRA's notice requirement when he served Defendant Barnhart with a notice of claim on June 19, 2012, pursuant to the Maine Tort Claims Act, 14 M.R.S. § 8107, and by sending a detailed factual memorandum about the assault on June 29, 2012, by way of a letter from Bean's counsel to counsel for Defendants. Petitioner's argument fails. The Second Circuit has held that administrative tort claims cannot be made to substitute for compliance with the grievance process. *See Macias v. Zenk*, 495 F.3d 37, 42-44 (2d Cir. 2007) (citing *inter alia Woodford v. Ngo*, 548 U.S. 81, 95 (2006)). "Regardless of whether his tort claims or informal complaints put the prison officials on notice of his grievance '*in a substantive sense*,' [*Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004)], makes clear that to satisfy the PLRA a prisoner must also *procedurally* exhaust his available administrative remedies." *Macias*, 495 F.3d at 43 (citing *Johnson*, 380 F.3d at 697-98).

[4] *Hemphill* was one of several cases "concerning the nature and scope of the PLRA's exhaustion requirement" that were consolidated for argument and decided on the same day by the Second Circuit. *Hemphill*, 380 F.3d at 682 & n.2 (citing *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004); *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004); and *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)). The Second Circuit has since questioned whether the doctrines of estoppel and special circumstances survived the Supreme Court's decision in *Woodford* requiring proper exhaustion. *See Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011). Nonetheless, in *Amador*, an allegation of misconduct by prison officials was treated as an estoppel defense to failure to exhaust: "A prisoner may invoke the doctrine of estoppel when defendants took affirmative action to prevent him from availing himself of grievance procedures." *Id.* at 103 (quotation marks omitted). In *Amador*, the Court declined to reach the issue whether claims of estoppel and special circumstances survived *Woodford* because the prisoner at issue in any event had failed to establish either estoppel or special circumstances. *Amador*, 655 F.3d at 102-03. In *Amador*, the Second Circuit did not analyze which party has the burden to establish estoppel, but it nevertheless applied that burden to the prisoner. 655 F.3d at 102-03; *see also Singh v. Lynch*, 460 F. App'x 45, 47-48 (2d Cir. 2012) (citing *Hemphill*, 380 F.3d at 686-90).

8

intimidation prevented him from exhausting administrative remedies, "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Id.* at 688 (quotation marks omitted).[5]

Preliminarily, Bean's suggestion that he did not file the grievance because of concerns of retaliation or as the result of intimidation by prison officials is unsupported on the record. In fact, Bean does not assert by way of affidavit that he chose not to file the grievance due to these concerns. Furthermore, the fact that Bean actually filed a grievance may undercut any argument that Bean was prevented from doing so as the result of any conduct for which Defendants could be responsible.

Defendants maintain that Bean's excuse for the late filing (i.e., that he was unaware of the 15-day deadline because he only had the prison handbook containing the grievance policy for a few days before the assault) is both legally and factually insufficient. Defendants first contend that the grievance policy is a publicly available, formally adopted regulation of the Department of Corrections, and, therefore, Bean should be presumed to be aware of the 15-day deadline. Second, Defendants assert in their motion (but do not include in their statements of fact) that "Bean did not have just four days to review the policy; he also had the fifteen day period following the assault in which to read it." (Motion at 6.) Third, Defendants argue that Bean received copies of the same policy when he was incarcerated on two prior occasions, in 2007 and 2008. Finally, Defendants

---

[5] The Fourth Circuit has also discussed the meaning of the term "available" in the context of the PLRA requirement of exhaustion, stating: "Because the PLRA does not define the term, courts have generally afforded it its common meaning; thus, an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

9

note that Bean did not allege any misconduct on the part of prison officials that prevented him from filing a grievance.

Defendants have established that they provided Bean with the grievance procedure, in writing, upon Bean's admission to the prison. Defendants have also established that Bean did not file his grievance in accordance with the 15-day time period required by the grievance procedure. The record evidence, however, includes certain facts that could support Bean's contention that he was prevented from filing the grievance within 15 days of the alleged incident because he did not have access to information, including his handbook in which the grievance procedure is set forth, when his placement in the prison was changed immediately following the incident. More specifically, Bean contends, and has provided supporting record evidence, that following the incident he did not have access to the critical information because he was first placed in the infirmary and then in a special unit within the prison. Although Defendants did not directly challenge Bean's contention that his placement prevented him from filing the grievance within the applicable 15-day time period, Bean has not necessarily established that his placement prevented him from filing the grievance. An issue remains whether Bean's placement in fact prevented him from filing the grievance. Accordingly, summary judgment is not warranted on this record. The recommendation, therefore, is for the Court to deny the motion for summary judgment.[6]

---

[6] If the Court adopts the recommendation, the issues become at which stage of the proceedings the defense of failure to exhaust administrative remedies should be determined, and whether the facts pertaining to that defense should be decided by the Court or by a jury. At oral argument, the parties appeared to agree that the issue is appropriately decided by the Court in advance of any trial on the merits. This approach is consistent with the Ninth Circuit's reasoning in *Albino v. Baca*, in which case the Court observed that the trial court should have considered the motion for summary judgment as a motion to dismiss. The Court explained that "[i]n deciding a motion to dismiss for failure to exhaust, a [district] court may look beyond the pleadings and decide disputed issues of fact." *Albino v. Baca*, 697 F. 3d 1023,1030 ((9th Cir. 2012) (quotation marks omitted), *reh'g granted*, 709 F.3d 994. Because a denial of the motion for summary judgment would generate these issues, a pretrial conference to discuss and schedule further proceedings regarding Defendants' affirmative defense that Bean failed to exhaust his administrative remedies is probably warranted.

## III. CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court deny Defendants' motion for summary judgment.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

March 12, 2014　　　　　　　　　　　　　　　　/s/ John C. Nivison
　　　　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge