UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BENJAMIN BEAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 1:13-cv-196-NT |
| | ) |
| PATRICIA BARNHART, in her individual capacity as former Warden for the Maine State Prison, and | ) ) ) ) |
| JOSEPH PONTE, in his individual capacity as Commissioner for the Maine Department of Corrections, | ) ) ) ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' FAILURE-TO-EXHAUST DEFENSE**

On May 24, 2012, Benjamin Bean was assaulted with a padlock by a fellow inmate at the Maine State Prison. Bean later brought this Eighth Amendment[1] suit under 42 U.S.C. § 1983 ("**Section 1983**") and the Maine Civil Rights Act (the "**MCRA**"), 5 M.R.S. § 4682,[2] seeking to hold then-Warden Patricia Barnhart and

---

[1] Courts interpret the Cruel and Unusual Punishments Clause of the Eighth Amendment to prohibit prison officials from acting with deliberate indifference to a substantial risk that an inmate will suffer serious injury, including the risk that an inmate will be violently attacked by another inmate. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Lakin v. Barnhart,* 758 F.3d 66, 70 (1st Cir. 2014) (quoting *Farmer*, 511 U.S. at 833). A plaintiff bringing a claim based on alleged deliberate indifference to such a risk must establish, at a minimum, that: (1) objectively, the inmate was "incarcerated under conditions posing a substantial risk of serious harm"; and (2) subjectively, a prison official acted or failed to act in conscious disregard to that risk. *Farmer*, 511 U.S. at 834, 839-40.

[2] Section 1983 permits a plaintiff to bring a claim for redress against any person acting under color of state law who subjects him or causes him to be subjected to a deprivation of "rights, privileges, or immunities secured" by the United States Constitution or other federal law. 42 U.S.C. § 1983. The Maine Civil Rights Act allows a plaintiff to bring a parallel claim for violations of either federal or Maine law. *See* 5 M.R.S. § 4682; *Nillson-Borill v. Burnheimer*, 505 F. Supp. 2d 180, 183 (D. Me. 2007).

Maine Department of Corrections Commissioner Joseph Ponte liable for failing to protect him from danger.

Before me is Warden Barnhart and Commissioner Ponte's affirmative failure-to-exhaust defense under the Prison Litigation Reform Act (the "**PLRA**"), 42 U.S.C. § 1997e, mounted on the basis that Bean failed to properly exhaust available administrative remedies by missing a deadline for filing a grievance. Below, I find that Barnhart and Ponte did not prove by a preponderance of the evidence that there was an available remedy for the claims Bean raises in his suit and **DENY** their request for relief.

## LEGAL STANDARD

Where an issue is "tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). Under Federal Rule of Civil Procedure 52, the duty of making findings of fact and conclusions of law rests exclusively with the trial court. 9C Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2578 (3d ed. 2015) ("Proposed findings submitted by counsel are no more than informal suggestions for the sole purpose of assisting the court."). The Court proceeds by reviewing the facts in the evidentiary record[3] and determining whether they satisfy the legal elements the party bearing

---

[3] The below findings of fact are based on the January 6, 2015 testimony of Wendell Atkinson and Benjamin Bean, Defendants' exhibits 1 through 10, an excerpt from an October 28, 2014 deposition of Bean that Defendants' counsel read into evidence without objection, and excerpts from an April 26, 2012 deposition of corrections officer Bob Costigan included in the summary judgment record (ECF Nos. 26-1, 29-2). The Defendants objected to the admission of the Costigan deposition excerpts on relevance grounds and I reserved ruling on the issue. I now deny the Defendants' objection, as the

the burden of proof must establish. *See* Fed. R. Civ. P. 52(a)(1); *Kelley v. Everglades Drainage Dist.*, 319 U.S. 415, 421 (1943).

## FINDINGS OF FACT

**I.     The Grievance Policy**

1. The Maine State Prison is a state-run facility in Warren, Maine.

2. Its administration has adopted Policy Number 29.1, which is a general grievance policy for reviewing and resolving inmate complaints regarding official misconduct and neglect. Defs.' Ex. 1 (the "**Grievance Policy,**" the "**Policy**" or "**Policy 29.1**").

3. Section VI(A)(1) of the Grievance Policy delineates seven types of matter inmates may grieve, but also specifically excludes certain subjects from the Policy's coverage:

> A client (any person in the custody or under the supervision of the Department of Corrections) may file a grievance with the Grievance Review Officer to request administrative review of any *policy, procedure, practice, condition of confinement, action, decision, or event* that directly affects the client, that he/she believes is in violation of his/her rights or is in violation of departmental policies and procedures, and for which he/she believes a departmental employee or contractor is responsible. A grievance may not be filed regarding the following matters, since appeal procedures[4] for handling these matters already exist:
>
> a. Classification procedures and decisions including, but not limited to, a decision to place a client in high risk management, administrative segregation, or protective custody or a decision about custody level, a work assignment, participation in an institutional or community-based program, or transfer . . . .

Policy 29.1 § VI(A)(1) (emphasis added).

---

deposition excerpts do make certain material facts "more or less probable," *see* Fed. R. Evid. 401, although I note that the ultimate result here would be the same whether I admitted them or not.

[4]     The Defendants did not put these alternate appeal procedures, or any testimony concerning them, into the record.

4. Section VI(A)(2) of the Grievance Policy provides that standard grievance forms "must be used for the grievance process." Policy 29.1 § VI(A)(2).

5. A copy of the standard grievance form the Maine State Prison provides to inmates is attached to this order as Appendix A. *See also* Defs.' Ex. 1 at 10; Defs.' Ex. 2. Its first paragraph includes the following instruction:

> **DO NOT** use this form to seek review of any matter for which an appeal procedure already exists. (See 29.1 Procedure A, #1 . . . .).

Defs.' Ex. 1 at 10; Defs.' Ex. 2.

6. Section VI(A)(8) of the Grievance Policy establishes deadlines for filing a grievance form depending on the type of matter the grievance "concerns":

> If the grievance concerns a specific *action*, *decision*, or *event*, the grievance must be filed within fifteen (15) days of when the action, decision or event occurred. If the grievance concerns a *policy*, *procedure*, *practice*, or *condition of confinement*, the grievance must be filed while the policy, procedure, or practice is in effect or the condition of confinement is current. The Grievance Review Officer shall grant an exception in a case where it was not possible for the client to file a grievance within the fifteen (15) day period.

Policy 29.1 § VI(A)(8) (emphasis added).

7. An inmate filing a grievance must "state on the grievance form, as briefly and concisely as possible, the specific nature of his/her complaint, including all persons and dates involved." Policy 29.1 § VI(B)(4).

8. After an inmate submits a grievance form, a Grievance Review Officer must immediately review it to determine if the matter is grievable, if the grievance was filed in a timely manner, and if the inmate attempted to resolve the matter informally. Policy 29.1 § VI(C)(2)-(4).

9. If any of these prerequisites is not met, the Grievance Review Officer must immediately return the grievance to the inmate and note the reason. Policy 29.1 § VI(C)(2)-(4). Otherwise, the Grievance Review Officer must investigate the grievance and issue a written response within twenty days. Policy 29.1 § VI(C)(8)-(9).

10. An inmate dissatisfied with the Grievance Review Officer's decision may appeal it first to the prison's warden and then to Maine's Commissioner of Corrections. Policy 29.1 § VI(D)(1)-(2), (E)(1)-(3).

## II. Bean's Prior Stays at the Maine State Prison

11. Benjamin Bean was previously incarcerated at the Maine State Prison in May of 2007 and March of 2008.

12. Bean testified that, prior to his release at the end of the March 2008 stay, another inmate confronted him and told him that he would get hurt if he ever came back to the Maine State Prison.

## III. Bean's Attack and Grievance

13. Bean was incarcerated at the Maine Correctional Center ("**MCC**") in Windham, Maine in early May of 2012.

14. On May 17, 2012, officials transferred Bean from MCC to the Maine State Prison.

15. On May 21, 2012, an inmate assaulted Bean with a padlock. Bean sustained serious injuries, including multiple lacerations to his head and shoulders.

16. After the attack, officials transferred Bean to the prison's infirmary.

17. After approximately three or four days, officials transferred Bean from the infirmary to the prison's Segregated Management Unit ("**SMU**"), where he was confined to his cell for twenty-three hours a day.

18. After approximately four or five weeks, officials transferred Bean from the SMU to Two Bridges Regional Jail ("**Two Bridges**"), a county-run facility in Wiscasset, Maine.

19. On July 10, 2012, Bean submitted a grievance form (the "**Grievance**") to Maine State Prison officials with the help of a caseworker. Defs.' Ex. 2.

20. In the space allotted for an inmate to "explain what prevented filing within the [fifteen-day] time limit,"[5] Bean wrote:

    > [D]id not know there was a 15 day limit[.] I only had a handbook for D.O.C. polic[ies] for four days. [I] [d]id not have a chance to go over [the] grievance polic[ies] and have not had a handbook since.

    Defs.' Ex. 2.

---

[5] The language used in this part of the grievance form does not account for the fact that, under the terms of Policy 29.1, the fifteen-day limit does not apply to all grievances. *Compare* Defs.' Ex. 1 at 10; Defs.' Ex. 2 *with* Policy 29.1 § VI(A)(8).

21. In the space allotted for an inmate to "[c]oncisely state the specific nature of [his] complaint," Bean wrote:

> On the 19th of May I spoke with [Maine State Prison Employee 1] telling him I was in danger of being assaulted possibly killed by[ ] other inmates d[ue] to enemy issues at the prison[.] He told me there was no place to put me but where I was because every place was full[.] On the 21st of May, I was assaulted very badly with a pad-lock by[ ] [Inmate 1] and another inmate[.] [T]his all happened 4 days after I got to the Maine State Prison[.] I al[ ]so told my caseworker at M.C.C. that this would happen if I was sent to the prison[.] I filled out [an] enemy form with her and spoke with a [sergeant]. So I was sent anyway[.] I'm scar[r]ed badly on the back of my head, not incl[ ]uding mental[l]y scar[r]ed as well for life. D.O.C. was more worried about housing and not my safety.

Defs.' Ex. 2.

22. On July 13, 2012, Grievance Review Officer Atkinson issued a written decision denying Bean's grievance on the grounds that Bean failed to submit the grievance form within fifteen days of his attack and failed to attempt to resolve his grievance informally.[6] Defs.' Ex. 3.

23. At some point between July 10, 2012 and July 17, 2012, officials transferred Bean from Two Bridges to MCC.

24. On July 17, 2012, Bean appealed Grievance Review Officer Atkinson's decision to Maine State Prison Warden Patricia Barnhart. Defs.' Ex. 4. In the space on the appeal form allotted for an inmate to state the reasons for the appeal, Bean wrote:

> I got to the Maine State Prison on the 17th of May[.] [G]ot my handbook about rules, policies, e[tc]. I spoke with [Maine State Prison Official 1] about me being in danger on the 19th of May[.] [H]e failed to do anything to p[re]vent the assault that took place on the 21st of May[.] I was in the infirm[a]ry until the 24th of May and put down in the SMU unit [where] I did not have my handbook to read and find out there was a 15 day limit on a grievance. As to resolving this issue informally I spoke with [Maine State Prison Official 1] after I was assaulted and [Maine

---

[6] At the January 6, 2015 evidentiary hearing, the Defendants expressly abandoned any argument that Bean's failure to attempt informal resolution was a proper basis dismissing the Grievance.

6

> State Prison Official 2] and a caseworker from close-unit named [omitted] about the assault and how it could have been avoided if they had just listened and act[ ]ed instead of doing nothing. I was assaulted with a padlock and almost killed because . . . DOC did not take me seri[o]us when I told them I was in danger at the Prison. I spent from the 24th of May until[ ] the 28th of June in SMU and had[ ] no handbook about policy and process of a gr[i]evance and now I am at TBCJ with no D.O.C. handbook.

Defs.' Ex. 4.

25. On August, 13, 2012, Warden Barnhart denied Bean's appeal. Defs.' Ex. 5. Warden Barnhart noted that "[t]he reasons you outlined in your appeal for not submitting your original grievance within the 15 day time limit are insufficient" and that "you did not attempt an informal resolution to your grievance at the time of the alleged assault, as required." Defs.' Ex. 5.

26. On August 18, 2012, Bean appealed Warden Barnhart's decision to Maine Department of Corrections Commissioner Joseph Ponte. In the space on the appeal form allotted for an inmate to state the reasons for the appeal, Bean wrote:

> On 5-17-12 I was placed at MSP even though I told staff at MCC that [it] was not safe to go to MSP d[ue] to enemy issues[.] On 5-19-12 I spoke with [Maine State Prison Employee 1] [illegible] caseworker telling him I was having problems and I needed to be moved because I was being called a "skinner" and being threatened[.] [H]e told me that there was no place to put me that [illegible] and place was full and said for me to put in for a pod transfer[.] In the meantime [he] would let the Sgt. know to keep an eye on me[.] On 5-21-12 I was beat[e]n very [badly] by[ ] [Inmate 1] and he used a padlock to do the ass[a]ult ag[ain]st me[.] [T]his [happened] 4 days after my intake to the Prison and two days after I spoke with [Maine State Prison Employee 1] [and] told him I was in danger of being hurt. I was al[ ]most killed with a pad-lock because [no] one listen[ed] to me and failed to protect me[.] As for not fil[ ]ing within 15 day[s] I did not [have] a handbook long enough to go over the policy before I was ass[a]ulted and then sent to SMU with no handbook.

7

  Defs.' Ex. 6.[7]

27. On September 19, 2012, Commissioner Ponte denied Bean's appeal, noting only that "[t]he responses you received at the lower levels are correct." Defs.' Ex. 7.

## PROCEDURAL HISTORY

On May 30, 2013, Bean filed a lawsuit against Warden Barnhart and Commissioner Ponte under Section 1983 and the MCRA asserting violations of the Eighth Amendment's prohibition on cruel and unusual punishment. Pl.'s Compl. (ECF No. 1) (the "**Complaint**"). The Complaint alleges that, prior to Bean's assault: (1) "several other inmates had sustained serious assaults at the hands of other inmates, many of which involved the use of padlocks as weapons"; (2) "prison officials were aware of the use of padlocks as weapons in inmates on each other" but nonetheless continued issuing padlocks to inmates; and (3) Bean "warned Defendants of the serious risk of harm to himself if placed at the Maine State Prison in Warren," but they "simply ignored the warning." Compl. ¶¶ 10-12. The Complaint alleges that, as a result, Bean was "violently assaulted by another inmate at the Maine State Prison," that "[t]he assailant used a padlock," and that Bean "suffered significant head and facial injuries." Compl. ¶¶ 7-9.

Barnhart and Ponte filed a joint answer asserting that "[t]he claims of the plaintiff under federal law are barred by his failure to exhaust administrative remedies." Defs.' Answer 3 (ECF No. 4). Barnhart and Ponte moved for summary

---

[7] The photocopy of Bean's appeal to Commisioner Ponte included in the record as Defendants' Exhibit 6 is cut off on the left edge. Where it is obvious what the missing or cut-off words were, I include them in brackets. Where it is not, I note in brackets that the content of the form is not legible.

judgment on that basis, Defs.' Mot. for Summ. J. (ECF No. 18), and I denied the motion, finding that genuine issues of material fact remained. Order Affirming Rec. Dec. on Defs.' Mot. for Summ. J. (ECF No. 38). By consent of the parties, I agreed to decide the exhaustion issue in advance of the merits and held an evidentiary hearing on January 6, 2015.

## DISCUSSION

### I. The Governing Law

The PLRA places limits on prisoner lawsuits premised on federal rights. In relevant part, it provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other such Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the PLRA requires "proper exhaustion" of a prisoner's remedies, including "compliance with an agency's deadlines and other procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006).

Failure to exhaust available remedies is an affirmative defense that a defendant must raise and prove. *Jones v. Bock*, 549 U.S. 199, 211-12 (2007); *see also Booth v. Churner*, 532 U.S. 731, 736 n.4, 738-39 (2001) (a remedy is "available" only where there is "the possibility of some relief"); *Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002) (a remedy is "available" only if it is "capable of use" or "at hand").

The defense is adjudicated in two phases. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc), *cert denied* 135 S. Ct. 403 (2014). First, the defendant must

establish that there was a generally available administrative remedy and that the prisoner failed to properly exhaust that remedy. *Id.* The case law indicates that Defendants can meet this initial burden by proving: (1) that the jail had a formal grievance procedure in place that inmates were able to take advantage of, *see id.*; (2) that the grievance procedure covered the type of claim at issue and offered the possibility of at least some relief, *see Booth*, 532 U.S. at 736 n.4, 738-39 (2001); *Malik v. Dist. of Columbia*, 574 F.3d 781, 785 (D.C. Cir. 2009); and (3) that the plaintiff either failed to grieve the claim at all or failed to meet requirements imposed by the grievance procedure. *See Woodford*, 548 U.S. at 90-91, 93.

If the defendant meets this initial burden of proof, a burden of production shifts to the prisoner to present evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Courts have found this burden met in a number of circumstances, including where the plaintiff showed that an official told the plaintiff he could not file a grievance and the plaintiff had no ready means to investigate further, *Dillon v. Rogers*, 596 F.3d 260, 268-69 (5th Cir. 2010), and where prison officials declined to reach the merits of a grievance "for reasons inconsistent with or unsupported by applicable regulations." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010). However, a plaintiff cannot meet his burden of production by merely pointing to evidence showing that he was not subjectively aware of the grievance procedure's requirements. *Twitty v. McCoskey*, 226 Fed. Appx. 594,

596 (7th Cir. 2007). The ultimate burden of proving that there was an available remedy remains with the defendant at all times. *Jones*, 549 U.S. at 211-12.

## II. Application of the Governing Law to the Facts of this Case

The Complaint alleges that "prior to the assault on Plaintiff, Plaintiff . . . warned Defendants of the serious risk of harm to himself if placed at the Maine State Prison in Warren," that the "Defendants simply ignored the warning," and that, as a result, "Bean was violently assaulted by another inmate at the Maine State Prison." Compl. ¶¶ 7, 12. Fairly construed, it asserts a claim that Warden Barnhart and Commissioner Ponte acted with deliberate indifference to the Plaintiff's safety by failing to heed his warning that he would be attacked if he remained in the Maine State Prison's general population.

At the January 6, 2015 evidentiary hearing, I noted that a placement or transfer issue like this would appear to fall under the Grievance Policy's classification exclusion.[8] Because this issue had the potential to be determinative, I invited the parties to address it in their proposed findings of fact and conclusions of law. *See Malik*, 574 F.3d at 785 (finding defendant failed to establish there was a generally available remedy where the relevant grievance policy categorized the plaintiff's claims as nongrievable).

---

[8] As quoted in full above, that exclusion provides that "a grievance may not be filed regarding . . . classification procedures and decisions . . . ." Policy 29.1 § VI(A)(1)(a). It then provides a non-exhaustive list of matters that fall within the exclusion and thus outside the Grievance Policy's coverage, including "a decision to place a client in high risk management, administrative segregation, protective custody," or "a decision about custody level . . . or transfer." Policy 29.1 § VI(A)(1)(a).

11

In Defendants' subsequent submission, they devoted a single paragraph to the issue I identified:

> Plaintiff's claim arises from an assault by another inmate. Although plaintiff also asserts that he should not have been transferred from the Correctional Center to the prison, the gravamen of his claim is that Maine State Prison officials failed to heed his warnings and failed to take steps to protect him from assault by another inmate. This claim falls squarely within the Department's grievance policy, which applies to an "action, decision or event" that adversely affects the inmate. Because the claim relates primarily to the event of the assault and the failure to protect him, the exception in the grievance policy for appeals of classification and transfer decision does not apply to the case.

Defs.' Proposed Findings of Fact & Conclusions of Law 4-5 (ECF No. 67); *accord* Defs.' Closing Argument 4 (ECF No. 68).[9]

No one disputes that this is a failure-to-protect claim; the Plaintiff simply alleges that *the way* Warden Barnhart and Commissioner Ponte failed to protect him was by improperly placing him in the Maine State Prison's general population with his attacker. This is not a novel Eighth Amendment theory. *See, e.g., Edmond v. Eaves*, 70 Fed. Appx. 159, 160 (5th Cir. 2003) (reversing grant of summary judgment on failure-to-protect claim premised on prison officials' failure to heed inmate's request for transfer).

The Defendants' theory that the Plaintiff's claim "relates primarily to the *event* of the assault," and therefore fell under the Grievance Policy and had to be grieved within fifteen days does not carry the day. The problem for the Defendants is that the

---

[9] The Plaintiff's Proposed Findings of Fact and Conclusions of Law (ECF No. 66) are primarily focused on marshaling evidence that, even if there was a generally available remedy, that remedy was effectively unavailable to the Plaintiff under the facts of this case. Because I find below that the Defendants failed to meet their initial burden of proving there was a generally available remedy in the first place, I do not reach that issue.

Plaintiff's failure-to-protect claim can be characterized either as a claim arising from the "event" of his attack *or* as a claim based on a classification decision.

The Grievance Policy expressly provides that a "[a] grievance *may not* be filed regarding . . . classification procedures and decisions . . . ." Policy 29.1 § VI(A)(1). The top of the standard grievance form reads: "**DO NOT** use this form to seek review of claims for which an appeal procedure already exists (See 29.1, Procedure A, #1 [the provision containing the classification exclusion] . . . .)." Defs.' Ex. 1 at 10; Defs.' Ex. 2. The most straightforward way to read the Grievance Policy is that where a claim hinges on a classification decision, the Policy's grievance procedure is not available to inmates. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2068 (2012) (explaining the canon of construction providing that courts should avoid reading neighboring general and specific provisions in a way the renders the specific provision "superfluous" by allowing to it to be "swallowed by the general one").

In short, the official conduct the Plaintiff's Complaint seeks to redress[10] is the decision or series of decisions that led to him being placed in the Maine State Prison's

---

[10] To the extent the Plaintiff's Complaint asserts a claim premised on a "policy" (the prison's policy of issuing padlocks to inmates), the Defendants concede that it only needed to be filed "while the policy is in effect," not within fifteen days of any specific event. Policy 29.1 § VI(8); *see also* Defs.' Proposed Findings of Fact & Conclusions of Law 5. There is no evidence suggesting that the prison rescinded the padlock policy between May of 2012, when he was attacked, and July of 2012, when the Plaintiff filed his Grievance, so it does not appear that the Plaintiff missed the applicable deadline. The Defendants argue instead that the Plaintiff failed to exhaust any claim about the padlock policy because it was "clearly not the subject" of the Grievance. Defs.' Proposed Findings of Fact & Conclusions of Law 5. It is not at all clear to me that the Plaintiff failed to adequately raise this issue, given that the Grievance specifically mentions that the Plaintiff was attacked with a padlock and that the Policy instructs inmates to plead their grievances "as briefly and concisely as possible." Policy 29.1 § VI(B)(4). Because I do not have adequate briefing on this issue, I do not reach it. The padlock practice at the prison would likely be relevant in any event, since it would be probative of the seriousness of the risk faced by the Plaintiff.

general population in May of 2012, despite his warnings that he was in danger there. Under the most straightforward reading of the Grievance Policy, which is the only policy the Defendants introduced into evidence, those decisions qualify as classification decisions. On these facts, the Defendants have not demonstrated that there was a generally available remedy for the claim raised in the Plaintiff's suit.

## CONCLUSION

Because the Defendants did not prove by a preponderance of evidence that there was an administrative remedy available for the Plaintiff's claim, the Court **DENIES** the Defendants' request for relief.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 26th day of June, 2015.